# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**PETRONELLA SMITH HOWARD,**

 Petitioner,

v.           Case No. 4:14cv35-RH/CAS

**J.V. FLOURNOY, Warden,**

 Respondent.

_____/

## REPORT AND RECOMMENDATION TO DENY § 2241 PETITION

On or about January 14, 2014, Petitioner Petronella Smith Howard, a federal prisoner proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. On April 11, 2014, Respondent filed an answer, with attachments. ECF No. 12; *see* ECF No. 14. Petitioner did not file a reply, although given the opportunity to do so. *See* ECF No. 10.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration, the undersigned concludes Petitioner is not entitled to federal habeas relief and, accordingly, this § 2241 petition should be denied.

## **Background**

On October 12, 2011, Petitioner was arrested in Fort Pierce, Florida, by agents with the Drug Enforcement Agency, pursuant to a federal arrest warrant.   Attach. A.   She was remanded to the Federal Detention Center in Miami.   *See* ECF No. 14 at 1 (Declaration of Patricia Kitka).   On October 14, 2011, Petitioner was released on bond with the special condition that she participate in the Home Confinement Program, which included home detention.   *See* ECF No. 12-2 at 3-7 (Attach. B - Conditions of Bond).

On August 10, 2012, in the United States District Court for the Southern District of Florida, following Petitioner's entry of a guilty plea, the court sentenced her to fifty (50) months in prison, to be followed by three (3) years of supervised release, for violations of 21 U.S.C. § 846 (conspiracy to possess with intent to distribute oxycodone and oxymorphone), 21 U.S.C. § 841(a)(1) (possession with intent to distribute oxycodone and oxymorphone), and 18 U.S.C. § 1349 (conspiracy to commit heath care fraud).   ECF No. 12-2 at 8-14 (Attach. C -Judgment). Petitioner was ordered to self-surrender for service of her sentence on October 12, 2012.   *Id.* at 2.   Petitioner surrendered as ordered to the U.S.

Marshal Service. *See* ECF No. 14 at 2. She did not appeal her conviction and sentence, and she did not file a motion under 28 U.S.C. § 2255. *See* ECF No. 1 at 2.

As indicated above, Petitioner Howard filed this § 2241 petition on or about January 14, 2014, while incarcerated at the Federal Correctional Institution in Tallahassee, Florida. ECF No. 1. She seeks credit on her sentence for time she spent in home confinement from October 12, 2011 (the date of her arrest), through August 10, 2012 (the date her sentence was imposed). *Id*. at 3, 6. She indicates she presented this claim to the Bureau of Prisons (BOP). *Id*. at 3.

Respondent filed an answer, with attachments. ECF Nos. 12, 14. Respondent argues this § 2241 petition should be dismissed because Howard did not first exhaust her administrative remedies. ECF No. 12 at 1-4. Respondent further argues, even assuming Howard had exhausted her administrative remedies, pre-trial home confinement does not constitute official detention for the purposes of 18 U.S.C. § 3585(b), Howard was not in the custody of the Attorney General during her pre-trial release, she was considered "released" on bail within the meaning of the Bail Reform Act during that time period, and, therefore, that time is not considered "official

detention" and she is not entitled to credit on her sentence.  *Id.* at 4-6.

According to the website for the Federal Bureau of Prisons, Petitioner Howard was released on May 26, 2015.  See www.bop.gov.  Because she is now presumably serving the supervised release portion of her sentence, however, this case does not appear moot.  See <u>Dawson v. Scott</u>, 50 F.3d 884 n. 2 (11th Cir. 1995) (disagreeing with Government's argument that appeal from denial of § 2241 petition was moot because Dawson had since been released from federal custody and explaining: "Dawson is still serving his term of supervised release, which is part of his sentence and involves some restrictions upon his liberty.  Because success for Dawson could alter the supervised release portion of his sentence, his appeal is not moot."); <u>Mitchell v. Middlebrooks</u>, 287 F. App'x 772, 774-75 (11th Cir. 2008) (relying on <u>Dawson</u> and holding § 2241 petition not moot, even though petitioner released during pendency of petition in district court, because of possibility petitioner could receive reduce or modified term of supervised release from sentencing court if successful in habeas proceeding: "Mitchell filed his § 2241 petition while he was still a federal prisoner and his petition alleged that he was being forced to serve too much time in prison.  As in <u>Dawson</u>, Mitchell was released

from prison and began serving his supervised release during the pendency of the action. The fact that he was released from prison, however, does not by itself render Mitchell's petition moot because, as in Dawson, the supervised release he is currently serving 'is part of his sentence and involves some restrictions upon his liberty.' Dawson, 50 F.3d at 886 n.2. Moreover, although Mitchell's original petition requested release, he has since asked for permission to modify the request for relief to include the termination of his supervised release. Success for Mitchell in his § 2241 petition could, therefore, 'alter the supervised release portion of his sentence.' *Id.*").

## Analysis

The Judiciary Act of 1789 granted federal courts the power to issue the writ of habeas corpus. *See* United States v. Hayman, 342 U.S. 205 (1952). The habeas remedy is now codified in 28 U.S.C. § 2241, subsection (c)(3) of which provides that the writ of habeas corpus shall not extend to a prisoner unless the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." As noted in Hayman, prisoners must bring habeas corpus applications in the district of confinement. 342 U.S. at 213. Because courts with federal prisons in

their jurisdictional boundaries became inundated with habeas petitions, and because the materials, witnesses, and other evidence which had a significant bearing on the determination of the legality of a sentence were generally located in the district where sentence was imposed rather than where the prisoner was confined, in 1948 Congress enacted § 2255 of Title 28. See Hayman, 342 U.S. at 212–14, 218; see also Wofford v. Scott, 177 F.3d 1236, 1239 (11th Cir. 1999).

The language of § 2255 suggests, and the Eleventh Circuit has expressly concluded, that this statute channels challenges to the legality of the imposition of a sentence, while leaving § 2241 available to challenge the continuation or execution of an initially valid confinement. See Antonelli v. Warden, U.S.P. Atlanta, 542 F.3d 1348, 1351–52 (11th Cir. 2008); United States v. Jordan, 915 F.2d 622, 629 (11th Cir. 1990) (explaining § 2255 is primary method of collateral attack on federally imposed sentence). Thus, § 2241 provides an avenue for challenges to matters such as the administration of sentences or parole, prison disciplinary actions, prison transfers, and certain types of detention. See Antonelli, 542 F.3d at 1352 (petition challenging decision of federal Parole Commission is properly brought pursuant to § 2241); Thomas v. Crosby,

371 F.3d 782, 810 (11th Cir. 2004) (petition challenging pre-trial detention is properly brought pursuant to § 2241); <u>Bishop v. Reno</u>, 210 F.3d 1295, 1304 n.14 (11th Cir. 2000) (petition challenging Bureau of Prisons' administration of service credits, including calculation, awarding, and withholding, involves execution rather than imposition of sentence, and thus is matter for habeas corpus).

In this case, Howard's § 2241 petition challenges the execution, or calculation, of her sentence. Specifically, she takes issue with the decision of the BOP not to allow her credit for time from October 12, 2011, the date of her arrest, through August 10, 2012, the date her sentence was imposed.

The U.S. Attorney General, acting through the BOP, administers a federal defendant's sentence and initially has the exclusive authority to determine when a federal sentence commences and to compute sentence credit awards after sentencing. 18 U.S.C. §§ 3585(a), 3621(b); <u>United States v. Wilson</u>, 503 U.S. 329, 335 (1992); <u>Rodriguez v. Lamar</u>, 60 F. 3d 745, 747 (11th Cir. 1995). A federal prison sentence "commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official

detention facility at which the sentence is to be served." 18 U.S.C.

§ 3585(a). Further,

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent <u>in official detention</u> prior to the date the sentence commences –
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

*Id.* § 3583(b) (emphasis added).

After a petitioner exhausts administrative remedies with the BOP, the district court may review the constitutionality of the BOP's decision and statutory construction. *See* <u>Rodriguez</u>, 60 F. 3d at 747. "[I]f congressional purpose is clear, then interpreting courts and administrative agencies 'must give effect to the unambiguously expressed intent of Congress.'" *Id.* (quoting <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 843-43 (1984)). If the statutory provision is silent or ambiguous, the court must defer to the agency's reasonable interpretation unless the interpretation is "arbitrary, capricious, or manifestly contrary to the statute.'" *Id.* (quoting <u>Chevron</u>, 467 U.S. at

844).

Here, Petitioner Howard indicates she sought relief through the BOP. ECF No. 1 at 3. Respondent asserts, however, that Petitioner has not exhausted her administrative remedies. ECF No. 12 at 1-4. Respondent attaches the Declaration of Joksan Morgan, a legal assistant with the BOP Consolidated Legal Center in Miami, dated April 9, 2014. ECF No. 12-3 (Attach. D). Morgan reviewed the administrative remedy records related to Howard and found the records reflect that Howard filed "a Request for Administrative Remedy with the Warden at FCI Tallahassee on July 16, 2013 related to her request for prior custody credit for home confinement," and the Warden denied the request on July 22, 2013. *Id.* at 3. Howard "filed an appeal of this denial to the Region, which was received on August 30, 2013," and "[t]he Region denied the appeal on February 26, 2014. *Id.* Morgan explains that "[a]s of April 8, 2014, [Howard] has not appealed the Region's decision to the General Counsel's National Inmate Appeals Office," on a form BP-11, the final administrative appeal required to exhaust administrative remedies. *Id.* at 2-3. It thus appears that Petitioner Howard attempted to exhaust her administrative remedies but did not pursue the process to its proper conclusion.

Case No. 4:14cv35-RH/CAS

Notably, the Eleventh Circuit Court of Appeals has recently held, in Santiago-Lugo v. Warden, 785 F.3d 467 (11th Cir. 2015), that a § 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect, overruling its earlier decision in Gonzalez v. United States, 959 F.2d 211 (11th Cir. 1992), relied on by Respondent.   The court explained that exhaustion of administrative remains a requirement, "it's just not a jurisdictional one."   Santiago-Lugo, 785 F.3d at 475.

> What its non-jurisdictional nature means is that a court need not inquire into exhaustion on its own.   A court has the discretion to accept or reject a concession from the respondent that administrative remedies have been exhausted.   And because exhaustion is non-jurisdictional, even when the defense has been preserved and asserted by the respondent throughout the proceeding, a court may skip over the exhaustion issue if it is easier to deny (not grant, of course, but deny) the petition on the merits without reaching the exhaustion question.

*Id.* at 475 (citations omitted).

Regardless, on the merits, Petitioner Howard is not entitled to relief. *See* Dawson v. Scott, 50 F.3d 884 (11th Cir. 1995); Rodriguez, 60 F.3d at 748.   The Eleventh Circuit has explained:

> Although the language differs in section 3568 [which provided that "[t]he Attorney General shall give any . . . person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed"] and present section 3585(b), the majority of circuits that have considered the issue have determined that "the term

> 'custody' under § 3568 has the same meaning as the phrase 'official detention' under § 3585.". . .
>
> Interpreting section 3568, the Former Fifth Circuit held that "custody" is "characterized by incarceration," and that credit against a federal sentence does not accrue "until the prisoner is received at the place of imprisonment." The Former Fifth Circuit also determined that a presentence convict's time on a "highly restricted bond" was not "custody" under section 3568 because it was not incarceration.

*Id.* at 887-88 (citations and footnotes omitted). The Eleventh Circuit held that a § 2241 petitioner was not entitled to sentence credit for time spent confined in a halfway house, explaining:

> Dawson was confined to the premises of the halfway house at night only. During the day, he was to work at a job or to seek employment. Such liberty is markedly different from custodial incarceration in a penitentiary. *See* United States v. Parker, 902 F.2d 221, 222 (3d Cir. 1990) (holding that confinement "subject to a defendant's being released to go to work, cannot possibly be equated with an equivalent period of imprisonment"). Thus, we have joined other circuits that have determined that custody or official detention time is not credited toward a sentence until the convict is imprisoned, and that <u>release stipulations or imposed conditions that do not subject a person to full physical incarceration do not qualify as official detention</u>.

*Id.* at 888 (footnote omitted; emphasis added). The court further explained:

> [A]t the time pertinent to Dawson's sentence, the BOP, as the administering agency, specifically had determined that *release on bail or bond, despite the conditions, was not creditable*

> toward a sentence, but that incarceration time was creditable. At the first appearance of a criminal defendant before a judicial officer after arrest, the defendant is either detained or released, with or without conditions. 18 U.S.C. § 3142(a). Dawson's case exemplifies both possibilities and the resulting sentence credit consequences. When he was arrested, Dawson was officially imprisoned or detained, for which he received credit against his sentence. Subsequently, he was released on bond to a halfway house and, later, to a safe house, for which he alleges that he improperly did not receive sentence credit. The fact that Dawson did not have a home to which he could be released on bond and, thus, had to reside in a halfway house is inconsequential with regard to sentence credit. "[C]onfinement to the comfort of one's home is not the functional equivalent of incarceration in either a practical or a psychological sense." [United States v.] Zackular, 945 F.2d [423,] 425 [(1st Cir. 1991)]. For confinement purposes, a federal criminal defendant may be in one of two states: released or detained. It is Dawson's *release status* during the time that he was in halfway and safe houses, rather than official detention, that is determinative as to sentence credit.

*Id.* at 890-91 (footnotes omitted). See Reno v. Koray, 515 U.S. 50, 53 (1995) (holding that time spent by prisoner at community treatment center while released on bail pursuant to Bail Reform Act, before commencement of his federal sentence, was not "official detention" and thus prisoner not entitled to sentence credit under § 3535(b)).

Respondent has provided the Declaration of Patricia Kitka, a Correctional Programs Specialist with the Designation and Sentence Computation Center, Federal BOP. ECF No. 14. The Declaration

affidavit indicates that Howard's sentence commenced on October 12, 2012, the day she surrendered herself to federal custody. *Id*. at 2. "A total of 3 days of prior custody credit was applied to her sentence from her arrest on October 12, 2011, through the day she was released on bond on October 14, 2011." *Id*. The Declaration explains that prior custody credit is governed by 18 U.S.C. § 3585(b), quoted above. *Id*. The Declaration further explains that BOP Program Statement 5880.28, Sentence Computation Manual (CCCA), defines "official detention" as "time spent under a federal detention order," and the time Howard spent on bond in the Home Confinement Program "is not considered time spent under a federal detention order." *Id*. As a result, BOP did not credit that time against her sentence. *Id*. at 2-3.

"Because the BOP's construction is 'permissible,' 'reasonable,' and not an 'arbitrary, capricious, or manifestly contrary' statutory interpretation, we must defer to it." Dawson, 50 F.3d at 891 (quoting Chevron, 467 U.S. at 843). Accordingly, Howard's § 2241 petition should be denied.

Case No. 4:14cv35-RH/CAS

## Conclusion

It is therefore respectfully **RECOMMENDED** that the petition for writ of habeas corpus filed under 28 U.S.C. § 2241 (ECF No. 1) be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on June 28, 2016.

        **S/ Charles A. Stampelos**
        **CHARLES A. STAMPELOS**
        **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this report and recommendation, a party may serve and file specific, written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**